**Clifford WILLIAMS, Glenn Barker and Michael Whyte aka Rupert Williams, Appellants–Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–9310–PC–391.

Court of Appeals of Indiana, Fifth District.

Oct. 11, 1994.

Transfer Denied Jan. 11, 1995.

A. Luis Ortiz, Indianapolis, for appellants.

Pamela Carter, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

SHARPNACK, Chief Judge.

Clifford Williams, Glen Barker, and Michael Whyte appeal the denial of their petitions for post-conviction relief. We affirm.

Williams, Barker, and Whyte (collectively, the petitioners) present three issues for our review, which we consolidate and restate as

1. whether the petitioners submitted their guilty pleas knowingly, intelligently, and voluntarily when the trial court did not advise them in the plea proceeding of the possibility of deportation; and

2. whether the petitioners received the effective assistance of counsel.

The facts most favorable to the judgment are as follows. The petitioners, noncitizens of the United States, were arrested following an investigation by police into a large-scale Jamaican cocaine distribution network operating in the Indianapolis metropolitan area. At the petitioners' guilty plea hearing on April 23, 1991, the petitioners each pleaded guilty to conspiracy to commit dealing in cocaine, a class A felony. Pursuant to their separate plea agreements, on May 31, 1991, Williams received a sentence of twenty years with fifteen years suspended and five years executed, Whyte was sentenced to twenty-five years imprisonment, and Barker was sentenced to twenty years imprisonment.

At the guilty plea hearing, Barker and Whyte were represented by attorney Lonnie Randolph, Williams by attorney Thomas Alsip. The court advised each petitioner of the charge to which he was pleading guilty and questioned each petitioner individually concerning whether the guilty plea was given knowingly, intelligently, and voluntarily, as required by Ind.Code § 35-35-1-2(a) and the Indiana Supreme Court's holding in *White v. State* (1986), Ind., 497 N.E.2d 893. The court did not mention the deportation consequences of the guilty plea, nor did any of the

petitioners or their counsel raise the matter of deportation at the guilty plea hearing.

As a result of their convictions, deportation proceedings were brought against the petitioners by the United States Immigration and Naturalization Service. The petitioners were ordered to be deported after completing their sentences of imprisonment.

On October 29, 1992, Barker and Whyte filed petitions for post-conviction relief. Williams filed his petition for post-conviction relief on December 4, 1992. Post-conviction hearings were held on May 21, 1993, and June 25, 1993. The judge denied each of the petitions.

■ The petitioner bears the burden of proof in a petition for post-conviction relief. *Popplewell v. State* (1981), Ind., 428 N.E.2d 15, 16. The post-conviction court is the trier of fact and the sole judge of the weight and credibility of the evidence. *Id.* Where the petitioner appeals the denial of a post-conviction relief petition, he appeals from a negative judgment. In such cases, it is only where the evidence is without conflict and leads to but one conclusion, and the court below has reached the opposite conclusion, that we will disturb the decision of the post-conviction court as being contrary to law. *Id.*

I

■ We first address the petitioners' argument that they could not have submitted their guilty pleas knowingly, intelligently, and voluntarily when the trial court did not advise them in the plea proceeding of the possibility of deportation.

Indiana's guilty plea statute, I.C. § 35–35–1–2, sets forth a series of determinations that a court must make before accepting a guilty plea, including the determination that the accused has been informed of certain constitutional rights as mandated by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and of the possible criminal penalties resulting from the guilty plea. The petitioners concede that the court advised them of the rights enumerated in this statute, but argue that due process requires the court to inform noncitizens of the depor-

tation consequences of a guilty plea. We disagree.

Our federal courts have largely considered deportation to be a "collateral" consequence of a guilty plea. *United States v. Del Rosario* (D.C.Cir.1990), 902 F.2d 55, *cert. den.*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316; *Fruchtman v. Kenton* (9th Cir.1976), 531 F.2d 946, *cert. den.*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178; *Michel v. United States* (2d Cir.1974), 507 F.2d 461. Collateral consequences attending a guilty plea in some circumstances may be far less onerous than deportation. As noted in *Del Rosario, supra*, such collateral consequences "may include the loss of civil service employment, of the right to vote and to travel freely abroad, of the right to a driver's license, and of the right to possess firearms." 902 F.2d at 59 (citations omitted). In Indiana, however, the term "collateral consequences" has been applied in the guilty plea context to certain "subsequent negative consequences of an earlier conviction," *Pike v. State* (1990), Ind. App., 557 N.E.2d 1, 3, *vacated on other grounds*, 569 N.E.2d 650.

> "[W]e have often held that one who pleads guilty need not be advised [by the court] that the conviction might have adverse but future collateral consequences. *See Arnold v. State* (1989) 2 Dist.Ind.App., 539 N.E.2d 969, *trans. denied*, and cases cited therein. Such holdings are unquestionably premised upon the rationale that the immediate conviction is the lone concern and future or contemplated but uncertain consequences need not be considered or made subject of discussion or advisement. Such considerations are irrelevant to the validity, *vel non* of the particular conviction in dispute."

*Id.*, 557 N.E.2d at 3. Such collateral consequences have been as severe as the imposition of consecutive sentences resulting from prior convictions, *Stockey v. State* (1987), Ind., 508 N.E.2d 793; the revocation of parole, *Jones v. State* (1989), Ind.App., 536 N.E.2d 1051, *reh'g denied;* and the possibility that the defendant's parole board could require him to serve part of the paroled sentence before commencing his sentence in the current offense, *Morlan v. State* (1986),

Ind., 499 N.E.2d 1084, and *Arnold, supra.* In all of the above Indiana cases, the courts on appeal found that the trial court was not required to advise the accused of the collateral consequences of his plea. In *Jones, supra,* Judge Miller stated that "[t]he revocation of parole (or probation) is a collateral consequence of a guilty plea and as such a court has no duty to inform the defendant of any consequences he may face as a result of such revocation." 536 N.E.2d at 1053. In *Morlan, supra,* the Indiana Supreme Court held that the possibility that the defendant's parolee status could result in the imposition of a consecutive sentence was a collateral consequence of the defendant's plea, and thus the trial court was not required to advise the defendant of it. 499 N.E.2d at 1086.

The responsibilities of a trial court in accepting a guilty plea are set forth with great specificity in our statutes and case law. *See White, supra,* and *Herman v. State* (1988), Ind., 526 N.E.2d 1183. We may not impose upon the courts the additional duty of inquiring into the citizenship and immigration status of criminal defendants.

In the present case, the record shows that the trial court went to great lengths to establish that the petitioners' guilty pleas were made knowingly, voluntarily, and intelligently. The trial court did not err in accepting the petitioner's guilty pleas.

## II

█ The petitioners also argue that they did not receive effective assistance of counsel because their attorneys did not advise them of the federal deportation consequences of pleading guilty to a felony. This is a question of first impression in Indiana.

█ Our standard of review governing challenges to the adequacy of legal representation was stated by the Indiana Supreme Court as follows:

"The United States Supreme Court has established a two-part standard by which claims of ineffective assistance of counsel are evaluated. Preliminarily, appellant must make a showing that the performance of his trial counsel was deficient. Appellant then must show that he suffered

prejudice as a result. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This Court has stated that judicial scrutiny of counsel's performance is highly deferential and should not be exercised through distortions of hindsight. Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut the presumption. *Duncan v. State* (1987), Ind., 514 N.E.2d 1252."

*Clark v. State* (1990), Ind., 561 N.E.2d 759, 762. To overcome the presumption of competency, the defendant must identify the act or omission and the court must determine from all the circumstances whether the act or omission was outside the range of professionally competent assistance. *Maez v. State* (1988), Ind.App., 530 N.E.2d 1203, 1211, *trans. denied.*

The *Strickland* test was found applicable to the guilty plea situation in *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). There, the Court set forth the relevant standard:

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' *McMann v. Richardson,* 397 U.S. 759, 771 [90 S.Ct. 1441, 1449, 25 L.Ed.2d 763] (1970). As we explained in *Tollett v. Henderson,* 411 U.S. 258 [93 S.Ct. 1602, 36 L.Ed.2d 235] (1973), a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received was not within the standards set forth in *McMann.*' *Id.,* at 267, 93 S.Ct. at 1608."

*Hill,* 474 U.S. at 56–57, 106 S.Ct. at 369.

In the present case, the petitioners contend that they were unaware that deportation would result from their guilty pleas, that their attorneys failed to advise them of this fact, and that had they known that deportation was a possible consequence of their guilty pleas, they would have pleaded not

guilty and gone to trial.[1] Before addressing the petitioners' specific claims, however, we must determine whether a claim of ineffective assistance of counsel can be premised on the failure to advise a defendant of the deportation consequence of a guilty plea.

No authority exists which places the specific duty upon criminal defense lawyers in Indiana to discuss the immigration consequences of a conviction or guilty plea. Indiana attorneys are, however, under general duties of competence and diligence, among others, pursuant to the Rules of Professional Conduct. As noted by Judge Staton in *Smith v. State* (1991), Ind.App., 565 N.E.2d 1114, *reh'g denied, trans. denied:*

> "Indiana Rule of Professional Conduct 1.4(b) states: 'A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.' The comment to RPC 1.4 provides in part:
>
> ['] The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party.[']
>
> Implicit in RPC 1.4 and its comment is the recognition that a client makes decisions regarding his representation based upon the information which he receives from his attorney regarding the legal consequences of the various choices which he may make."

*Id.* at 1117. The possibility of deportation, which has been termed "the equivalent of banishment," *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433

(1948), is a consequence which undoubtedly would enter into the decision-making process of a defendant considering a plea bargain.

As noted above, federal courts have considered deportation to be a collateral consequence of a guilty plea, and this principle has been applied in the context of a challenge to the effectiveness of the accused's representation. Several federal courts have determined that the failure to inform an accused of the likely deportation consequences of a guilty plea does not constitute ineffective assistance of counsel. *Del Rosario, supra; Santos v. Kolb* (7th Cir.1989), 880 F.2d 941, *cert. den.,* 493 U.S. 1059, 110 S.Ct. 873, 107 L.Ed.2d 956; *United States v. George* (7th Cir.1989), 869 F.2d 333; *United States v. Yearwood* (4th Cir.1988), 863 F.2d 6; *United States v. Campbell* (11th Cir.1985), 778 F.2d 764. As noted by the court in *George:*

> "[A]ctual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea. A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution. While the Sixth Amendment assures an accused of effective assistance of counsel in '*criminal prosecutions,*' this assurance does not extend to collateral aspects of the prosecution."

*George,* 869 F.2d at 337 (emphasis in original).

In Indiana, as discussed above, a court's failure to advise an accused of the collateral consequences of a guilty plea does not invalidate the plea. No Indiana case has addressed the question of whether the failure of an attorney to advise a client concerning such collateral consequences constitutes ineffective representation. We believe that, under certain circumstances, it does.

Unlike the trial court, whose responsibilities in accepting a guilty plea are set forth

---

[1]. Petitioners also argue that their attorneys were ineffective for failing to request a judicial recommendation against deportation (JRAD) at the guilty plea hearing pursuant to 8 U.S.C. § 1251(b). This provision was repealed by the Immigration Act of 1990, however, effective November 29, 1990, and the JRAD was no longer available on the date of the petitioners' guilty plea hearings. The petitioners' argument is therefore without merit.

with great specificity, an attorney is under a general duty

"to ascertain that his client's plea of guilty is entered voluntarily and knowingly, that is, upon advice which enables the accused to make an informed, intelligent, and conscious choice whether to plead guilty or not."

*Edwards v. Estelle* (5th Cir., 1976), 541 F.2d 1162, *cert. denied*, 430 U.S. 973, 97 S.Ct. 1662, 52 L.Ed.2d 367. We do not believe that an attorney's duties to a client are limited by a bright line drawn between the direct consequences of a guilty plea and those consequences considered collateral.

Deportation may be a penalty more severe than a prison sentence. Deportation may result in families being divided or in "loss of property or life; or of all that makes life worthwhile." *Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938 (1922). It has been called "a savage penalty," "a life sentence of exile." *Jordan v. De George*, 341 U.S. 223, 243, 71 S.Ct. 703, 714, 95 L.Ed. 886 (1951) (Jackson, J., dissenting).

We recognize that the petitioners could not have been unaware that dealing cocaine is a criminal offense in the United States and that a conviction for such would have dire consequences, including an effect on immigration status. This is particularly true in the cases of Barker and Whyte, who entered this country illegally. Nonetheless, all aliens present in the United States, whether here legally or illegally, are entitled to due process. The Sixth Amendment of the United States Constitution and Art. 1, § 13 of the Indiana Constitution guarantee the right to counsel at any critical stage of prosecution where counsel's absence "might derogate from the accused's right to a fair trial." *Koehler v. State* (1986), Ind., 499 N.E.2d 196, 198 (*quoting United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967)). "The purpose of the Sixth Amendment guarantee of representation is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights and to assure him the guiding hand of counsel at every step in the proceeding." *Id.* After an examination of the standards set forth above for

determining the effective assistance of counsel, we must conclude that this "guiding hand" would be a poor one indeed if it did not point out to the accused the deportation consequences of a guilty plea.

As noted in our decision in *Moran v. State* (1993), Ind.App., 625 N.E.2d 1231,

"[t]he federal Constitution operates to provide at least a minimal protection to citizens [and noncitizens] no matter in what state the issues may arise. However, it by no means limits the expansiveness of rights provided to those in a particular state, which may freely provide greater protection of individual liberty than the federal Constitution requires."

*Id.* at 1236. We therefore rely upon Art. 1, § 13 of the Indiana Constitution, which provides that an accused has the right "to be heard by himself and counsel," in deviating from the precedent set by the federal courts in our Seventh Circuit and other circuits. It is our firm belief that the consequence of deportation, whether labelled collateral or not, is of sufficient seriousness that it constitutes ineffective assistance for an attorney to fail to advise a noncitizen defendant of the deportation consequences of a guilty plea.

We must therefore determine whether the attorneys in the present case met this obligation. As noted above, the petitioners each testified that their attorneys failed to advise them concerning deportation. The attorneys, however, both testified that the immigration consequences of the guilty pleas were discussed with their clients.

The following was elicited during the direct examination of Lonnie Randolph, attorney for Whyte and Barker:

"Q. Do you practice any immigration law?

A. I've handled immigration cases before.

Q. You handled immigration cases?

A. Approximately, maybe, four or five, maybe.

Q. Are you acquainted with immigration laws stating that any individual convicted of a drug offense is subject to deportation?

A. That's correct, I'm aware of that.

Q. And did you make the defendant here aware of that?

A. I'm pretty sure I did.

Q. Okay. When you say, pretty sure, do you know for sure whether you did or not?

A. I say I'm pretty sure because I represented Mr. Barrett [a co-defendant at trial] in a subsequent immigration case as a direct result of this matter. And I also had contact with the immigration authorities down here prior to disposition of this case down here.

Q. Did you advise the defendants that by them pleading guilty they'll serve their time in jail and then after that they would have to go through deportation proceedings?

A. Yes.

Q. Did you advise them that they may have a hearing in the meantime as to deportation?

A. Yes.

Q. Have you handled any deportation hearings on your own on some other individuals?

A. Yes."

Record, p. 46–47. Thomas Alsip, attorney for Clifford Williams, testified as follows:

"Q. Now, do you practice immigration law?

A. No.

Q. Okay. Are you acquainted with the Immigration's procedures of deportation?

A. No.

Q. Okay. Are you acquainted with the requirements of what must be shown in a deportation, in fighting a deportation by an alien petitioner?

A. Well, no. I'm, I'm a lawyer. I suppose I could look up the information, but I've never handled any immigration cases.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. . . . During the course, during the course of your involvement in, in the trial, did you at any time recall discussing with Mr. Williams his consequences of deportation.

A. Yes.

Q. Okay. And can you tell me what it is that you told him?

A. Well, I believe that actually he brought it up. We just discussed generally the fact that the Immigration Service would be interested if he obtained a, if a conviction was obtained against him, and it could affect his status in the United States. But that's about all that was ever talked about.

Q. Okay. So you didn't really check and see whether or not he was, in fact, an illegal alien, or an alien that was subject to deportation?

A. Did I personally?

Q. Yes.

A. No.

Q. Okay. And other than that conversation, nothing was done to advise him of his consequences of, of the guilty plea?

A. Well, we, we had the conversation a couple, a few times. In fact, I had it with his wife, or his lady friend at that time, and I think, I believe the Court's file will show that I filed a petition for him to be allowed to be married in the Marion County Jail while he was incarcerated, and I believe the purpose for that was to deflect the immigration problem.

Q. Okay. But did you check and see whether or not that would have deflect [sic] the deportation problem?

A. No."

Record, p. 159–61. Where the evidence is in conflict, our standard of review obliges us to resolve the conflict in favor of the judgment of the post-conviction court. This testimony shows, then, that the subject of deportation was explicitly discussed by Randolph and his clients and touched upon by Alsip and his client.

As noted above, in reviewing the denial of post-conviction relief, we may only reverse the post-conviction court where the evidence is without conflict and leads to but one conclusion, and the court below has reached the

opposite conclusion. *Popplewell, supra.* In the present case, a sufficient showing was made that the petitioners were put on notice by their attorneys regarding the deportation consequences of their guilty pleas, and therefore we cannot say that the evidence leads to a conclusion opposite that reached by the court below.

Accordingly, the judgment of the post-conviction court is affirmed.

AFFIRMED.

RUCKER, J., concurs.

HOFFMAN, J., concurs in result with opinion.

HOFFMAN, Judge, concurring.

I concur in the result. I do not agree that the failure to inform a criminal defendant of the possibility of deportation as a civil collateral consequence flowing from a criminal conviction constitutes ineffective assistance of counsel. While I do agree that Indiana can choose to provide greater protection of individual liberty than that required by the federal Constitution and that this Court is not bound by the federal decisions referred to by the majority, there is no indication that Indiana has ever intended to make such an extension as to advisement of collateral consequences to a guilty plea.

The analysis within *Santos v. Kolb* (7th Cir.1989), 880 F.2d 941, is instructive:

"In a recent and similar case, we held that it was not ineffective assistance of counsel for an attorney to fail to inform his client of the immigration consequences of a conviction for a drug offense. In *United States v. George*, 869 F.2d 333 (7th Cir. 1989), we stated:

'[A]ctual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea. A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding. It is collateral to the criminal prosecution. While the Sixth Amendment assures an accused of effective assistance of counsel in "criminal prosecutions," this assurance does not extend to collateral aspects of the prosecution.'" [Footnote and citations omitted.] . . .

'There are many collateral consequences to a criminal prosecution which, if not disclosed by counsel, nonetheless do not result in an involuntary plea of guilty. Consequently, we decline to hold as a matter of law that counsel's failure to inform a client as to the immigration consequences which may result from a guilty plea, without more, is "outside the wide range of professionally competent assistance." ' [Citations omitted.]

\*    \*    \*    \*    \*    \*

The failure of petitioner's counsel to inform him of the immigration consequences of his guilty plea, however unfortunate it might be, simply does not deprive petitioner of the effective assistance of counsel guaranteed by the Constitution."

*Id.* at 944–945. I would conclude that the failure to inform a non-citizen of civil collateral consequences to a guilty plea, without more, cannot form the basis for a claim of ineffective assistance of counsel.