## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Joel Schumm
Indiana University Robert H. McKinney School of Law

Paul T. Babcock
Certified Legal Intern, Appellate Clinic
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine M. Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ivan Sanchez,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

February 18, 2015

Court of Appeals Cause No.
29A04-1409-PC-426

Appeal from the Hamilton Superior Court.
The Honorable Gail Bardach, Judge.
Cause No. 29D06-1406-PC-4318

**Barteau, Senior Judge**

## Statement of the Case

[1] Ivan Sanchez appeals from the trial court's order denying his petition for post-conviction relief, contending that the post-conviction court erred by concluding that he did not receive ineffective assistance of trial counsel. Concluding as we do, however, that Sanchez has failed to demonstrate that the post-conviction court erred, we affirm.

## Facts and Procedural History

[2] Sanchez is a nineteen-year-old citizen of Mexico who had received the status of Deferred Action for Childhood Arrival ("DACA") prior to his arrest in Hamilton County. Sanchez was charged with one count of fraud and five counts of attempted fraud related to his theft of a debit card from a wallet found in the vehicle of another person. Sanchez pleaded guilty to one count of fraud as a Class D felony on March 20, 2014. The trial court sentenced Sanchez to 730 days with credit for seventy-four days served and the remainder of the time suspended to probation. After his conviction, Sanchez was detained and removal proceedings were instituted against him. Sanchez filed a petition for post-conviction relief which was denied by the post-conviction court after a hearing. Sanchez now appeals.

## Discussion and Decision

[3] Sanchez contends that he received ineffective assistance of trial counsel because he alleges he was not fully advised that by pleading guilty to fraud, a crime of

moral turpitude, he faced immigration consequences including the possibility of automatic deportation.

[4] Sanchez, who speaks English, was represented by attorney Eugene Kress at his guilty plea hearing and his sentencing hearing. Kress met with Sanchez twice and, after determining that Sanchez was not a U.S. Citizen, Kress advised Sanchez that there could be immigration consequences including deportation if he was convicted of this crime. Kress did not advise Sanchez that he was certain to be deported as a consequence of the conviction, but advised him of that possibility.

[5] Sanchez pleaded guilty to one count of Class D felony fraud and signed the misdemeanor and Class D felony advisement form, initialing each term. That form included the following advisement:

> If you are not a U.S. citizen, a criminal conviction may have immigration consequences, including deportation. You should discuss this possibility with your attorney because if you do plead guilty, it will result in a criminal conviction.

Appellant's App. at 27.

[6] Sanchez testified at his guilty plea hearing that he had read the advisement and that Kress had explained it to him. After reviewing the advisement form with Sanchez, Kress asked him if he had any questions. Sanchez did not express any concerns about pleading guilty and did not ask any questions about deportation. Kress told Sanchez that he did not know whether Sanchez would be deported because "[i]n some of these cases it happens, and in others it

doesn't." State's Ex. 1 at 14. After Sanchez's guilty plea hearing and sentencing, federal immigration authorities placed Sanchez in mandatory detention and initiated removal proceedings.

[7] Sanchez argues that the post-conviction court erred by denying his petition for post-conviction relief because he contends he met his burden of proving that Kress provided ineffective assistance by failing to advise him that his conviction for fraud would result in automatic deportation from the country.

[8] At the hearing on Sanchez's petition, Sanchez testified that when questioned by Kress he told Kress that he was a citizen of Mexico, but did not tell Kress about having received DACA status. He further testified that pertaining to deportation Kress had advised him that "if [he] took the plea, there would be a 50-50 chance that [he] would be deported." Tr. p. 9. Kress told him that being removed or deported from the United States "could be a possibility, but he didn't tell me that I was gonna [sic] get [] deported for sure." *Id*. at 10.

[9] Sanchez further testified on direct examination at the hearing on his petition as follows:

> Q:     Did Mr. Kress tender any other options besides the plea agreement to decide your case?
> A:     No.
> Q:     Did he mention going to trial?
> A:     I was planning [on] going to trial if, like, there was not an option.
> THE COURT:     I'm sorry, I didn't understand your answer. You were planning to go to trial, but what?
> A:     If there was another option, like, like—I was planning on going to trial if I couldn't get out on probation, because he told me I was

supposed to get on probation.

THE COURT:    So your answer is you were planning to go to trial if you couldn't get on probation?

A:    Yeah.

Tr. p. 11.

[10]    Kress's deposition was introduced into evidence during the hearing on Sanchez's petition. Kress explained his observations during his twenty years of practicing law as follows:

> I can only offer an explanation of what my experience is. When all of these cases, with people that I believe are here illegally, you know, my experience is I think the same experience of a lot of lawyers. Sometimes people are deported for crimes, and sometimes they're not. Sometimes they're deported for crimes that [] fit squarely within the statute as to what is or is not moral turpitude, and sometimes they are not deported for that. I've inquired of immigration lawyers about how we can know definitively what happens, and many times they tell me they don't know definitively what happens. It's really—my experience has been is that, you know, all I can do is tell my clients that are here illegally that there will be immigration consequences and leave it at that and then try to answer questions as best I can because I, frankly, have not seen anything that could tell me definitively that a person's going to be deported when they're convicted of any crime.

State's Ex. 1 at 15. Kress also stated that he did not know the list of crimes of moral turpitude "off the top of [his] head" and that he did not conduct any research on Sanchez's case. *Id.* at 7.

[11]    Linda Kelly, a professor of immigration law at the Indiana University Robert H. McKinney School of Law and practicing immigration attorney, testified as an expert witness at the hearing on Sanchez's petition. Kelly also represented

Sanchez in his removal proceedings. Kelly stated that non-citizens who are convicted of a crime involving moral turpitude are subject to automatic mandatory detention and are subject to removal proceedings. However, Kelly further testified that some people who otherwise qualify for mandatory detention and removal proceedings are overlooked.

[12] The post-conviction court denied Sanchez's petition after concluding that the evidence showed he had been advised that there could be immigration consequences if he pleaded guilty.

[13] A post-conviction proceeding is not a substitute for a direct appeal and does not provide a petitioner with a "super-appeal." *Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006). The post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. *Id*.

[14] Post-conviction proceedings are, by nature, civil proceedings in which the defendant must establish grounds for relief by a preponderance of the evidence. *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id*. On appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010).

[15] To prevail on a claim of ineffective assistance of trial counsel, a defendant must demonstrate that counsel performed deficiently and that the deficiency resulted

in prejudice. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008). To establish deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). To establish prejudice, the defendant must show that there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Kubsch*, 934 N.E.2d at 1147. An inability to establish either deficient performance or prejudice is fatal to a claim of ineffective assistance. *Rowe v. State*, 912 N.E.2d 441, 443 (Ind. Ct. App. 2009), *aff'd on reh'g*, 915 N.E.2d 561 (2009), *trans. denied* (2010).

[16] The State appears to have conceded at the hearing that Sanchez had established the prejudice part of the *Strickland* test. The following is the exchange between the State and the post-conviction court on the prejudice part of the test:

> THE STATE: I don't believe there was any testimony today that there was—I know how Defendant will argue—but I don't think Mr. Sanchez-Campis testified today that there was actually prejudice done. So we look at whether or not there was a deficient performance by Mr. Kress.
> THE COURT: Or, isn't—isn't whether Mr. Sanchez-Campis—He identified himself as Campis-Sanchez, not Sanchez-Campis.
> THE STATE: Oh, excuse me, Judge.
> THE COURT: So, I'm not sure, but isn't the testimony of Ms. Kelly that he was ordered removed? And that he wouldn't have been—
> THE STATE: Well, I don't know if there's any evidence today—

THE COURT:  — and that he wouldn't—and that he wouldn't have been ordered removed but for his conviction of the credit card fraud case.  Wasn't that her testimony?
THE STATE:  I think, yes.  I think that was her testimony.
THE COURT:  Doesn't—does that not establish prejudice to him?
THE STATE:  I don't know if he test—he didn't testify today that—
THE COURT:  Does he have to testify to it, or—
THE STATE:  No.
THE COURT:  — do I just have to find that there's prejudice?
THE STATE:  You just have to find that there's prejudice.
THE COURT:  And does that not constitute prejudice?
THE STATE:  I think that probably would.
THE COURT:  Okay.  So, let's not waste any time with that argument, okay?
THE STATE:  Okay.

Tr. pp. 38-40.

[17]     Therefore, we turn now to the part of the *Strickland* test dealing with deficient performance.  Sanchez attempted to support his claim by citing to *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  In *Padilla*, the petitioner, a native of Honduras, had been a lawful permanent resident of the United States for more than forty years during which he served in the Vietnam War as a member of the U.S. Armed Forces.  Padilla ultimately pleaded guilty to the transportation of a large amount of marijuana in his tractor-trailer.  He pleaded guilty after counsel not only failed to advise him of the automatic deportation consequences of pleading guilty, but told him that he need not worry about his immigration status after being in the United States for so long.  The United States Supreme Court found that Padilla was entitled to post-conviction relief because he had sufficiently demonstrated that his

counsel's performance was deficient by failing to inform Padilla that his plea carried a risk of deportation. 559 U.S. at 374. Indeed, the United States Supreme Court stated that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." 559 U.S. at 367.

[18] In Padilla's situation, the removal consequence for his conviction was clear. 8 United States Code section 1227(a)(2)(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . ., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." Thus, not only the failure to advise, but the erroneous advisement not to worry about deportation consequences amounted to deficient performance in *Padilla*.

[19] Sanchez, on the other hand, pleaded guilty to fraud. 8 United States Code section 1227(a)(2)(A)(i) provides that with respect to criminal offenses, "[a]ny alien who is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." Sanchez is correct that *Jordan v. De George*, 341 U.S. 223, 232, 71 S. Ct. 703, 708, 95 L. Ed. 886 (1951) holds that "the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude." However, unlike the code section in *Padilla*, the crimes involving

moral turpitude are not specifically set forth in the statute. The United States Supreme Court acknowledged in *Padilla* the following:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

559 U.S. at 369, 130 S. Ct. at 1483.

[20]    Kress testified that in his twenty years of practicing law he had consulted immigration attorneys for an explanation why certain non-citizens who could be deported were not, while others were. He testified that he was unable to obtain a definitive explanation for that observation. Kelly, an immigration lawyer and law professor, testified as an expert witness that Sanchez's offense made him subject to automatic removal. However, she offered additional expert testimony that not all non-citizens who are convicted of crimes of moral turpitude are deported for a variety of reasons such as their convictions being overlooked. Thus, under *Padilla*, Kress properly advised Sanchez that his plea carried a risk of deportation.

[21]     In *Segura v. State*, 749 N.E.2d 496, 500 (Ind. 2001), our Supreme Court noted that we had addressed the deficient performance part of the *Strickland* test in the context of advisement of deportation consequences in *Williams v. State*, 641 N.E.2d 44 (Ind. Ct. App. 1994), *trans. denied* (1995). In *Williams*, we concluded that the "consequence of deportation, whether labelled collateral or not, is of sufficient seriousness that it constitutes ineffective assistance for an attorney to fail to advise a noncitizen defendant of the deportation consequences of a guilty plea." 641 N.E.2d at 49. We affirmed the post-conviction court's order denying the three petitioners relief because although the petitioners claimed their attorneys failed to advise them, the testimony of the attorneys showed that "the subject of deportation was explicitly discussed by Randolph and his clients and touched upon by Alsip and his client." *Id.* at 50. Randolph specifically testified that he informed his clients that by pleading guilty they would serve their time in jail and would then have to go through deportation proceedings. Alsip discussed with his client the fact that "the Immigration Service would be interested" if the client was convicted and "it could affect his status in the United States." *Id*.

[22]     The *Segura* Court agreed that "the failure to advise of the consequence of deportation can, under some circumstances, constitute deficient performance." 749 N.E.2d at 500. The Supreme Court went on to say as follows:

> Otherwise stated, we cannot say that this failure as a matter of law never constitutes deficient performance. Whether it is deficient in a given case is fact sensitive and turns on a number of factors. These presumably include the knowledge of the lawyer of the client's status

as an alien, the client's familiarity with the consequences of conviction, the severity of criminal penal consequences, and the likely subsequent effects of deportation. Other factors undoubtedly will be relevant in given circumstances.

*Id.* at 500. However, the Supreme Court did not analyze Segura's claim under the deficient performance part of the test, but decided the appeal under the prejudice part of the *Strickland* test.

[23] Here, because Sanchez bore the burden of proving the allegations of his petition by a preponderance of the evidence and did not prevail, he appeals from a negative judgment. Thus, on appeal he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

[24] The evidence at the post-conviction hearing established that Kress met with Sanchez twice and, after learning of Sanchez's immigration status, advised him that there could be immigration consequences including deportation if he was convicted of fraud. Kress reviewed the advisement form with Sanchez, who signed it, and initialed each paragraph including the provision discussing the immigration consequences of pleading guilty. When questioned by the trial court at the guilty plea hearing, Sanchez indicated that he had read the advisement form and that Kress had explained it to him.

[25] Sanchez testified at the post-conviction hearing that Kress had told him there was a "50-50 chance" of being deported if he pleaded guilty to fraud. Tr. at 9. In his deposition testimony, Kress explained that in some cases, people who

should face deportation after conviction are not deported, while others are. Kress stated that he did not tell Sanchez that he would absolutely face deportation after pleading guilty because in his experience deportation could happen, but might not. However, Kress did tell Sanchez that there could be immigration consequences including deportation if he was convicted of this crime. Under these circumstances, Kress's advisements regarding deportation did not amount to deficient performance.

Sanchez has failed to establish that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.

# Conclusion

In light of the foregoing, the post-conviction court's order denying the petition for post-conviction relief is affirmed.

Affirmed.

Riley, J., and Barnes, J., concur.