**Erwin H. SMITH, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

No. 45A03–9007–PC–277.

Court of Appeals of Indiana,
Third District.

Jan. 29, 1991.

Rehearing Denied Feb. 28, 1991.

Susan K. Carpenter, Public Defender, Julia J. Casey, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Ian A.T. McLean, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Erwin H. Smith appeals the denial of his petition for post-conviction relief, raising two issues for our review:

I. Whether Smith's claims for post-conviction relief were barred by the erroneous application of the doctrine of laches.

II. Whether Smith knowingly, intelligently, and voluntarily entered his plea of guilty.

We reverse.

On May 15, 1978, Erwin H. Smith was charged by information with burglary and theft arising out of incidents alleged to have occurred on May 12, 1978. Smith was finally apprehended in 1983, and on August 26, 1983 he pled guilty to two counts of theft, for which he received concurrent three year sentences.

On December 14, 1983, Smith petitioned for a transcript of the trial proceedings, but did not file his petition for post-conviction relief until May 15, 1986. The post-conviction court denied his petition, and he appeals.

### I. *Laches*

Our courts have noted that while post-conviction relief is available at any time, the right to post-conviction relief may be directly or impliedly waived. *Perry v. State* (1987), Ind., 512 N.E.2d 841, 843, *rehearing denied.* Thus, in a post-conviction proceeding, the State may raise the affirmative defense of laches. In order for the doctrine of laches to bar relief, the State must prove by a preponderance of the evidence 1) that the petitioner unreasonably delayed in seeking relief, and 2) that the State has been prejudiced by the delay. *Id.*

Like any other sufficiency question, in determining whether the evidence is sufficient to support a finding of laches in a post-conviction proceeding, we will not reweigh the evidence or rejudge the credibility of the witnesses. *Taylor v. State* (1986), Ind.App., 492 N.E.2d 1091, 1092. We look only to the evidence most favorable to the judgment and to all reasonable inferences to be drawn therefrom. *Id.* at 1093. We will affirm if there is probative evidence to support the trial judge's decision. *Id.*

The State argued at the post-conviction hearing that Smith's delay in filing for relief resulted in prejudice, because the victims of the crimes are now either deceased or their whereabouts are unknown. In reply, Smith contended the situation now is the same as it was in 1983 when he entered his guilty plea. In support of his conten-

tion, Smith introduced evidence that the investigating officers were still available, the police reports were still available, that one victim committed suicide in 1979, and that the last information either party had about the whereabouts of the other victim dated back to 1980. The post-conviction judge found that Smith's claim was barred by laches.

On appeal, the State concedes "if the prejudicial conditions demanded by laches must always have occurred during the time the defendant waited while knowing of post-conviction remedies, it seems that the case for prejudice must fail." Appellee's Brief at 13. The State argues, however, that Smith's actions in evading capture for over four years caused the unavailability of the witnesses and the resulting prejudice to the State, and therefore asks us to hold that the doctrine of laches bars post-conviction relief when the alleged prejudicial delay occurred before the conviction.

■ The State contends that the equitable doctrine of "clean hands" should render the doctrine of laches applicable in order to prevent Smith from turning his years of flight into a "safe zone." The "clean hands" doctrine states that one coming into equity seeking relief must have clean hands in order to prevail. *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 1004, *transfer denied.* Smith correctly points out that it is not he who is seeking equitable relief, but the State. Thus, the clean hands doctrine is not applicable here.

■ Smith argues that the consideration of pre-conviction activities when evaluating the prejudice prong of the laches defense could effectively deny the post-conviction remedy to defendants whose pre-trial conduct is deemed to be dilatory. We agree. The purpose of post-conviction relief is to allow the defendant to raise issues not known at the time of the original trial or for some reason not available to the defendant at that time. *Wallace v. State* (1990), Ind., 553 N.E.2d 456, 458. Laches is a doctrine which infers a legitimate waiver of the right to challenge a judgment. *Perry, supra,* at 843. By definition, the post-

conviction remedy arises after conviction; logically, a defendant may not waive a right to post-conviction relief by his actions before conviction when no such right existed. We therefore hold that in order to support a claim of laches, the conduct constituting prejudicial delay must have occurred after the defendant was convicted. The post-conviction court erred in finding that Smith's delay was prejudicial to the State.

## II. *Voluntariness of Guilty Plea*

■ Although the post-conviction court based its denial of Smith's petition on the doctrine of laches, it made specific findings as to the merits of Smith's petition and indicated that it would also deny the petition on the merits. Record, p. 186. Therefore, we will address Smith's claim that the post-conviction court erred in finding that his guilty plea was entered into voluntarily, knowingly, and intelligently.

■ Although the State bears the burden of proving the affirmative defense of laches, the defendant must prove the merits of his post-conviction petition by a preponderance of the evidence. *Howey v. State* (1990), Ind., 557 N.E.2d 1326, 1328. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses, and its decision in a post-conviction relief proceeding will be reversed only where the evidence is without conflict and leads unerringly to a result different than that reached by the trial court. *Id.*

Smith bases his claim that his guilty plea was involuntary on several grounds, but since we find that the plea was involuntary due to his counsel's failure to investigate the availability of key witnesses for the State and inform Smith that the witnesses were unavailable, we will not address the remaining grounds.

The standard to be applied when ineffective assistance of counsel is alleged in a guilty plea situation was outlined by our Supreme Court in *Burse v. State* (1987), Ind., 515 N.E.2d 1383, 1385:

In general, in order to prove ineffective assistance of counsel, a defendant must

show two components: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. However, when a defendant opts to plead guilty rather than proceed to trial, the second component of the *Strickland* test is modified. A defendant, rather than needing to show prejudice, must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203.

Indiana Rule of Professional Conduct 1.4(b) states: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The comment to RPC 1.4 provides in part:

■ The client should have sufficient information to

participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party.

Implicit in RPC 1.4 and its comment is the recognition that a client makes decisions regarding his representation based upon the information which he receives from his attorney regarding the legal consequences of the various choices which he may make. Although the client is often as knowledgeable about the factual climate of his case as the attorney, this is not always true with respect to matters such as the availability of witnesses. Similarly, although the client may be aware of the factual circumstances of his case, he may not understand the significance of those facts in a legal context. Thus, effective representation requires at least a cursory inquiry into the factual background of a case before advising the client to seek disposal of the case by settlement or, in the criminal arena, by a guilty plea.

These considerations become particularly crucial in the guilty plea context. A criminal defendant has the right to require the State to prove all of the elements of a crime beyond a reasonable doubt through the vehicle of a jury trial. His decision whether to forego that right in exchange for a reduced sentence is directly related to the probability of success assigned by he and his attorney to the State's case—the defendant normally will plead guilty to a crime if he thinks the State's evidence is such that a conviction would be likely. Naturally, this decision is affected by the amount of information about the State's case to which the defendant's attorney has access. If the attorney makes no effort or a limited effort to acquire information, he decreases the accuracy of his predictions. Thus his advice to his client may unintentionally mislead the client, causing him to plead guilty when he would not have if he had known all relevant information which he could reasonably expect his attorney to procure prior to their conference.

Such is the case here. Although Smith's attorney received discovery which apparently consisted of the police reports, he did not file for additional discovery or attempt to contact the State's witnesses. At the hearing on post-conviction relief, an employee of the prosecutor's office testified that at the time the case was being investigated, she made approximately six phone calls in order to ascertain that one victim was deceased and the other victim had left the state and was unable to be located. Smith's attorney made no phone calls or other attempts to contact witnesses, despite the fact that five years had passed since the incident occurred. Had Smith known that these crucial witnesses were unavailable for trial, there is a reasonable probability that he would not have pled guilty to the offense. Since he did not know this information, we cannot find that Smith's guilty plea was knowing, voluntary and intelligent.

The State argues that Smith's attorney did not proceed further with discovery because Smith indicated that he wished to plead rather than go to trial. The argument begs the question. The issue is whether Smith would have wished to plead guilty if he had known of the unavailability of the State's witnesses.

Reversed.

MILLER, P.J., concurs.

GARRARD, J., dissents and files separate opinion.

GARRARD, Judge, dissenting.

While I agree with the majority's analysis concerning the laches defense, I dissent to its determination that the guilty plea was not knowingly, intelligently and voluntarily entered.

Nothing in the record discloses that Smith was misinformed about the charges, was under any disabling influence or that his plea was not otherwise properly entertained. Indeed, it was the result of a plea bargain.

The majority accepts Smith's hindsight that had he known the victims were unavailable he *might* not have pleaded guilty. Then again, he might not have wished to risk a burglary conviction.

I believe the circumstances here fall far short of the proof necessary to establish that counsel provided ineffective assistance. A variety of factors including time, cost and the accused's own wishes enter into the initial appraisal of a case. I find it unrealistic to suggest that in every case counsel must fully investigate or attempt to interview all the witnesses before he permits a client to plead guilty, yet in the absence of notice of some defect or the demands of the client, that appears to be the effect of the majority opinion. Counsel was given the state's file and he apparently gave it to Smith. Smith raised no question at the time. Instead, he apparently wanted the plea bargain. I would find his plea was properly accepted.