**STATE of Indiana, Appellant–
Respondent,**

v.

**Richard D. MOORE, Appellee–Petitioner.**

**No. 29S00–9008–PD–543.**

Supreme Court of Indiana.

April 23, 1997.

Rehearing Denied Aug. 21, 1997.

Pamela Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellant.

Susan K. Carpenter, Public Defender of Indiana, Thomas C. Hinesley, Joanna Green, Office of the Public Defender, Indianapolis, for Appellee.

BOEHM, Justice.

The State of Indiana appeals from a grant of postconviction relief to petitioner Richard D. Moore. The postconviction court vacated Moore's 1980 guilty plea for three counts of murder, and also the accompanying death sentence, on the ground that Moore had been denied his Sixth Amendment right to effective assistance of counsel and also because his plea was not voluntary. The State appeals only the reversal of the conviction. We hold that Moore's counsel was not ineffective at the guilt stage and that the postconviction court therefore clearly erred in setting the conviction aside. We also hold that as a matter of law Moore's plea was not involuntarily given. Accordingly, we reinstate Moore's conviction for three counts of murder and remand for a new sentencing hearing.

## Factual & Procedural Background

This case arose out of events that took place in Indianapolis on the night of November 6, 1979. Moore and his former wife, Rhonda Caldwell, had recently divorced. Moore went to her house that evening, where she was living with her parents. A domestic quarrel, beginning with a verbal clash, quickly led to violence. Before the night was out, Moore had shot and killed Caldwell, her father, and Indianapolis police officer Gerald F. Griffin, who had been called to the scene to investigate the dispute. Caldwell's mother was also shot but survived to give a statement used at the sentencing phase of Moore's prosecution. On November 7, 1979, the State charged Moore by information with the murder of Caldwell, her father, and Griffin, as well as with several counts of attempted murder and criminal confinement. The State also stated that it intended to seek the death penalty for Moore.

On August 25, 1980, the day his trial was scheduled to begin, Moore pleaded guilty without a plea agreement to three counts of murder. The State moved to dismiss the remaining charges four days later. On October 24, 1980, after a three-day sentencing hearing, the trial judge sentenced Moore to death. Moore's conviction and death sentence were affirmed on direct appeal. *Moore v. State*, 479 N.E.2d 1264 (Ind.1985). Moore petitioned for postconviction relief in 1986. On May 15, 1995, the postconviction court vacated the conviction and death sentence. In this appeal, the State challenges the decision to set aside the conviction but does not contest the reversal of the death sentence.

## Standard of Review

■■■■ As recently reiterated in *State v. Van Cleave*, 674 N.E.2d 1293 (Ind.1996), *petition for reh'g filed*, review of a judgment granting postconviction relief is governed by Indiana Trial Rule 52(A). In sum, as to factual determinations "[w]e reverse only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted) (citing *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995), *reh'g denied* ). As *Spranger* explained, "clear error" review requires the appellate court to assess whether "there is *any* way the trial court could have reached its decision." *Spranger*, 650 N.E.2d at 1120. In this review, we defer substantially to findings of fact but not to conclusions of law.

## I. Ineffective Assistance of Counsel

■■■■ To prevail on a claim of ineffective assistance of counsel, the defendant must show two things: (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In adjudicating claims under the first prong of *Strickland*, it is presumed that counsel exercised reasonable professional judgment in making important decisions; accordingly, we scrutinize the handling of the case with great deference. Counsel's conduct is assessed based on facts known at the time and not through hindsight. And rather than focusing on isolated instances of poor tactics or strategy in the management of a case, the effectiveness of representation is determined based on the whole course of attorney conduct. Finally, although egregious errors may be grounds for reversal, we do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests. *See, e.g., Butler v. State*, 658 N.E.2d 72, 78–79 (Ind. 1995); *Spranger*, 650 N.E.2d at 1121. For the second part of the *Strickland* test—the "prejudice" prong—*Van Cleave* recently clarified that to prevail on a claim of ineffective assistance of counsel in the guilty plea setting, the defendant must show not only a willingness to go to trial but for counsel's errors, but a reasonable probability that the result (a conviction) would have been different.

Here, the postconviction court made detailed findings on the reasonableness of Moore's counsel's performance at both the guilt and penalty stages, and pointed to several aspects of this assistance in setting the guilty plea aside. We accept these factual

findings but ascribe different legal significance to them. Much of the allegedly unreasonable performance bore not on the guilt phase but on the outcome at sentencing, an issue not before us in this appeal. We conclude for the reasons elaborated below that counsel's conduct pertaining to the guilt phase, while not perfect, was within the range of reasonable competent assistance required by the Sixth Amendment.

A. *Failure to request a second change of venue.*

In finding that Moore's trial counsel had been constitutionally ineffective, the postconviction court largely relied on counsel's misunderstanding of the law of venue. The alleged murders in this case took place in Marion County where Moore was first charged with the crimes. Moore and the State stipulated to a change of venue to Hamilton County and the case was transferred there on January 10, 1980. Moore's original trial counsel withdrew on March 13, 1980. Wilmer Goering, a Hamilton County lawyer then in private practice, was appointed to represent Moore. Goering wrongly believed that the case had to be tried in Hamilton County. In fact, as the postconviction court concluded, Goering could have sought a second change of venue upon a proper showing of community bias and prejudice against Moore. However, no such motion was ever filed.

In formulating a defense strategy, Goering was acutely aware of the racial overtones of the case: Hamilton County in 1980 had, and still today has, few minority residents. Moore is African–American and the three victims were Caucasian. Goering testified in the postconviction proceedings that the "most important factor" influencing his decision to recommend a guilty plea was his "evaluation that a [Hamilton County] jury hearing these facts with a black defendant, white victims, and a dead police officer would recommend the death penalty." In Indiana, if a death penalty case is tried to a jury, the jury also makes a non-binding recommendation to the judge as to the proper sentence. IND.CODE § 35–50–2–9(d)–(f) (1993 & Supp. 1996). Thus, Goering reasoned, the better

strategy was to plead guilty and forego a jury recommendation expected to be adverse.

 A defendant is entitled to a change of venue upon a showing that jurors are unable to disregard preconceived notions of guilt and render a verdict based on the evidence. *See, e.g., Bradley v. State,* 649 N.E.2d 100, 108 (Ind.1995), *reh'g denied.* Disposing of a motion for a change is within the sound discretion of the trial court. *Linthicum v. State,* 511 N.E.2d 1026, 1031 (Ind. 1987). The decision to seek a change of venue is generally a matter of trial strategy that we will not second-guess on collateral attack. *Wood v. State,* 512 N.E.2d 1094, 1098 (Ind.1987); *Allen v. State,* 498 N.E.2d 1214, 1216–17 (Ind.1986); *Bieghler v. State,* 481 N.E.2d 78, 97 (Ind.1985). In evaluating claims of ineffective assistance for failure to seek a change of venue, our decisions have found counsel's handling of a case competent where there was insufficient evidence to conclude the defendant could not have received a fair trial in the county in which the case was tried. Nearly all of these decisions involved alleged prejudice due to negative pretrial publicity. *See, e.g., Thompson v. State,* 671 N.E.2d 1165, 1169 (Ind.1996) (no showing of prejudicial pretrial publicity such that counsel should have sought change of venue); *Vaughn v. State,* 559 N.E.2d 610, 615 (Ind. 1990) (failure to explain change of venue option to defendant not ineffective where no showing that jury was not impartial); *Darnell v. State,* 435 N.E.2d 250, 255–56 (Ind. 1982) (insufficient showing of prejudicial pretrial publicity such that fair trial right was jeopardized); *Beard v. State,* 428 N.E.2d 772, 774 (Ind.1981) (same); *Lindley v. State,* 426 N.E.2d 398, 401 (Ind.1981) (same); *Kidwell v. State,* 260 Ind. 303, 307–08, 295 N.E.2d 362, 364–65 (1973) (failure to seek change of venue not neglect where newspapers did not misrepresent the facts and some of the publicity benefitted the defendant).

 Stated another way, the reasonableness of counsel's decision not to seek a change of venue is assessed based on whether there was such prejudice against the defendant that there is a reasonable probability the motion would have been granted by a trial judge acting according to law. Even

where this showing is made, reasonable trial strategy might have dictated keeping the case in the same venue for different reasons, and there no ineffective assistance arises. *Brockway v. State*, 502 N.E.2d 105, 108 (Ind. 1987). This case is somewhat anomalous in that there was no strategic decision made because Goering wrongly assumed the case had to remain in Hamilton County. We do not dispute that Goering would have sought the second change if he could have handled the defense over again. However, this does not control the ineffectiveness inquiry because, as explained above, the decision not to request the change cannot be condemned as unreasonable for Sixth Amendment purposes unless the surrounding circumstances supported granting the motion. Similarly, if there is no showing of a basis to grant the motion, an erroneous failure to make the motion is not ineffective assistance.

Ultimately we must focus on any threats to the defendant's right to an impartial jury. *Bradley*, 649 N.E.2d at 108. One can speculate that Moore's chances for a more favorable result might have been enhanced in a different county, but other than demographics there is no evidence that Moore could not have received a fair trial in Hamilton County. Rather than pointing to any negative pretrial publicity about his case—the typical basis for obtaining a change of venue—Moore alleges only that he faced the possibility of prejudice had he been tried in Hamilton County. The trial judge who accepted Moore's guilty plea testified on postconviction review that he "didn't feel that there would be any problems securing a jury that would be free from racial prejudice." Based on this testimony, it is reasonable to infer that the judge would not have granted a motion for a second change of venue even had it been made—a decision that would have been in accord with the controlling law at the time. Our decisions on the law of venue have held, both before and after the guilty plea in this case, that the mere possibility of local prejudice

does not suffice to support a discretionary change of venue. *Bradley*, 649 N.E.2d at 108; *Timmons v. State*, 500 N.E.2d 1212, 1217 (Ind.1986); *McFarland v. State*, 269 Ind. 385, 386, 381 N.E.2d 85, 86 (1978). Even though Goering should have known that he could have at least sought the change, it does not rise to the level of a failure of constitutional right to counsel where there is no showing that Moore could establish anything more than the possibility of prejudice in Hamilton County.

There is also a failure to establish that a change of venue would have altered Moore's ultimate decision to plead guilty. First, it is wholly speculative whether a new county would be viewed as more hospitable to a trial. If not, the recommendation to plead would have followed a change. In fact, Goering left open the possibility of advising a guilty plea even if he could handle the case over again. Second, even assuming concern for a jury recommendation would have been somewhat ameliorated by a county with more favorable demographics, Moore still faced the stark fact that he indisputably killed three people. Moore's only possible defense was mental defect, and as to that, as explained below four medical experts—two for the defense and two court-appointed—found him sane. The likelihood of a guilty plea irrespective of venue cannot be ignored. Piling all of these contingencies on one another leaves it simply too speculative that the venue issue would have had any effect. Rather, this presents one more in a long line of cases to the effect that isolated errors, omissions or judgment calls do not rise to the level of deprivation of constitutional rights without a stronger showing that the flaw would have affected the result.[1]

### B. *Lack of adequate resources.*

The postconviction court concluded that Goering lacked adequate resources for preparing Moore's defense. The trial judge authorized Goering to hire two mental health

---

1. *See Tidmore v. State*, 637 N.E.2d 1290, 1292 (Ind.1994) (failure to ask judge to admonish jury not ineffective assistance without showing that failure to request admonition altered outcome of the case); *Gann v. State*, 550 N.E.2d 73, 75 (Ind.1990) (failure to file speedy trial motion not ineffective assistance absent showing delay worked to defendant's detriment); *Miller v. State*, 650 N.E.2d 326, 330 (Ind.Ct.App.1995), *trans. denied* (failure to file motion not ineffective assistance absent showing that motion, if granted, would have aided defense).

experts to assess the viability of an insanity defense, co-counsel for the trial itself, and a research assistant or investigator, but not both. Goering opted to hire the research assistant, a strategic decision not faulted below. Asked what he would do differently now, Goering testified on postconviction relief that he "would have tried to assemble a larger defense team, including a private investigator, co-counsel from the outset, a mitigation expert, a neuropsychologist."

■ We need not assess the constitutional adequacy of Goering's resources because the postconviction court found that greater defense resources would have affected the outcome of the sentencing stage, but not the guilty plea. Goering, a Hamilton County-based lawyer, stated that he felt unable to conduct a thorough inquiry of the facts in Indianapolis without an investigator. The purpose of such an investigation would have been to examine the crime scene, reconstruct it if necessary, and interview more witnesses. The postconviction court found that this investigation, had it been conducted, would have yielded evidence enabling Moore to prove that he did not know Griffin was a police officer when he shot him. This showing would have negated the State's proof of one of the aggravating factors in the death penalty statute. The sentencing issue, however, is not before us. The postconviction court stated in its conclusions of law that the validity of Moore's guilty plea was undermined by the lack of resources, but this conclusion does not follow from the court's own findings of fact. Nowhere did the postconviction court find that the lack of adequate resources affected the decision to plead guilty. In sum, even assuming the defense's resources in this case were not adequate, we find no deficient attorney performance for Sixth Amendment purposes as to the guilt phase.

C. *Failure to pursue an insanity defense.*

■ The postconviction court concluded that Goering conducted an inadequate investigation of the possibility of mental health defenses based on cognitive and organic brain deficits. A neuropsychologist testified on postconviction review that Moore had an organic brain disfunction in 1979 that constituted a mental disease or defect. These organic problems affected Moore's ability to reason, judge and understand; and also caused Moore to act irrationally and inappropriately. The neuropsychologist also opined that Moore lacked the ability to conform his conduct to the requirements of law at the time of the shootings.

This expert testimony, given in 1995, contrasts markedly with opinions given by five doctors who assessed Moore's mental fitness in 1980. Soon after taking over the case, Goering filed a notice of intent to interpose an insanity defense. Four experts—three psychiatrists and a psychologist—were appointed to evaluate Moore's sanity. Two were chosen by Goering and two were court-appointed. Each concluded that Moore was sane and fit to stand trial. In addition, Goering independently asked a neurologist to examine Moore for organic brain deficiencies and the test came back negative. The postconviction court found that these experts made a number of errors in their assessment of Moore and that Goering, therefore, lacked "appropriate" mental health experts for Moore's defense. The methodology employed by the five may not have been perfect and, lacking the same training as a neuropsychologist, they might not have been able to uncover evidence of Moore's "organic deficits." The purpose of postconviction proceedings, however, is not to retry every aspect of the case with the benefit of hindsight. Death penalty litigation has become a specialized field in the two decades since the U.S. Supreme Court upheld capital punishment against constitutional attack. Through a process literally of trial and error, much has been learned during that time about proper administration and defense of capital cases. As a result, it can be presumed that the average representation of a capital defendant in Indiana today is more sophisticated—especially in the advent of Indiana Criminal Rule 24—than it was in 1980.

Nonetheless, when a guilty plea is collaterally attacked on grounds of ineffective assistance of counsel, the constitutional question is not whether counsel's investigation was

perfect, or could be done better today, but rather whether it was adequate based on what was known or should have been known at the time. Five professionals examined Moore. Only in hindsight can it be said that Goering should have hired a neuropsychologist rather than a psychiatrist, psychologist or neurologist. None of the five professionals suggested this. Goering cannot be faulted simply because a second neurological examination, focusing on cognition rather than reflex arcs, yielded different results fifteen years later. We have held in other cases that deciding not to plead an insanity defense in reliance on medical advice is not unreasonable attorney performance under *Strickland. See, e.g., Douglas v. State,* 663 N.E.2d 1153, 1155 (Ind.1996); *Haggenjos v. State,* 493 N.E.2d 448, 451 (Ind.1986). Goering may not have been entirely pleased with the results of the examinations, but he acted well within the range of reasonable competent assistance when he decided, based on the experts' opinions, that an insanity defense would not have succeeded. In sum, Goering's investigation of a possible insanity defense was adequate for Sixth Amendment purposes.

In setting aside the death penalty, the postconviction court noted numerous errors in the sentencing procedures in this case. Those findings, and the legal conclusions drawn from them, are not challenged but are not germane to whether Moore was denied his right to effective assistance of counsel at the guilt stage. Taking the postconviction findings as valid, we conclude that Goering provided reasonable and competent counsel in advising Moore to plead guilty. Therefore, the Sixth Amendment does not require that Moore's convictions for murder be set aside.

## II. Voluntariness of the Guilty Plea

■ A defendant has the right to plead guilty in a capital case, but that decision is given heightened scrutiny and must be "more carefully and fully explored on the record" than pleas for a term of years. *Trueblood v. State,* 587 N.E.2d 105, 108 (Ind.1992), *reh'g denied, cert. denied,* 506 U.S. 897, 113 S.Ct. 278, 121 L.Ed.2d 205. The trustworthiness of a guilty plea in a capital case is ensured by several procedural protections, including the requirement that the plea be voluntary—a protection for defendants recognized by our cases since early this century. *See, e.g., Ketring v. State,* 209 Ind. 618, 622, 200 N.E. 212, 214 (1936); *Mislik v. State,* 184 Ind. 72, 76, 110 N.E. 551, 552 (1915). The voluntariness requirement was codified in 1973 when Indiana revamped its laws governing criminal procedure. 1973 Ind. Acts, P.L. 325, § 4; *see now* IND.CODE § 35–35–1–3(a) (1993).

### A. *Voluntariness of the plea as distinct from other issues.*

■ *White v. State,* 497 N.E.2d 893 (Ind. 1986) remains the law on what a postconviction petitioner must show to set aside a guilty plea on grounds of lack of voluntariness. Indiana Code § 35–35–1–2 requires the court accepting the guilty plea to determine that the defendant: (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively waives several constitutional rights, including trial by jury, confrontation of witnesses, compulsory process, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been informed of the maximum and minimum sentences for the crime charged. The statute also provides that "[a]ny variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty." IND.CODE § 35–35–1–2(c) (1993).

■ Consistent with this section, *White* held that where a statutory advisement not required by the Indiana or U.S. Constitutions is not given, the defendant must plead "specific facts" that would enable the factfinder to conclude based on a preponderance of the evidence that the plea, as a result, was involuntary. *White,* 497 N.E.2d at 905. In *White,* we emphasized that a "plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for in the statute is unlikely to be found wanting in a collateral attack." *Id.; see, e.g., Harris v. State,* 671 N.E.2d 864, 869–70 (Ind.Ct.App. 1996), *trans. denied* (applying *White* to hold that guilty plea was voluntary because plea hearing statute was "strictly followed").

However, defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief. *White*, 497 N.E.2d at 905–06. In assessing the voluntariness of the plea, "we will review all the evidence before the court which heard his post-conviction petition, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record." *Id.* at 905.

■ Voluntariness is distinct from the requirement of a "factual basis" in support of the plea, IND.CODE § 35–35–1–3(b), which essentially "ensures that when a plea is accepted there is sufficient evidence that a court can conclude that the defendant could have been convicted had he stood trial." *Butler*, 658 N.E.2d at 76 (explaining quantum of evidence that must be shown to prove factual basis in support of guilty plea). Voluntariness is also distinct from ineffective assistance of counsel, despite some references in our cases to pleas as involuntary because not based on informed and effective counsel.[2] The Supreme Court made clear in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) that "voluntariness," as that term is applied in cases such as *White*, is not part of the ineffective assistance analysis under the Sixth Amendment. In *Hill*, the petitioner asserted he had relied on erroneous information supplied by his attorney regarding his parole date and that his plea was therefore "involuntary." The Court distinguished the attorney's advice about the parole date from the advisements that must be given by a federal judge under Federal Rule of Criminal Procedure 11 before accepting a

plea and proceeded to analyze the validity of the guilty plea under the *Strickland* test for ineffective assistance of counsel, despite the petitioner's characterization of his claim as an "involuntary" plea. *Hill*, 474 U.S. at 56–57, 106 S.Ct. at 369–70. The same is true of voluntariness in Indiana practice. It focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice.

### B. *Moore's plea is not involuntary under White.*

■ In setting aside Moore's guilty plea as involuntary, the postconviction court made the following factual findings. Moore was legally unsophisticated and quick to trust his attorney's advice. He was also hopeful of being sentenced to a term of years, rather than receiving the death penalty. Moore's hope for the minimum sentence was grounded on several factors. Despite being held in custody while awaiting trial, Moore was treated kindly by court officials and was not kept in restraints while visiting Goering's office or while undergoing mental health examinations. Moore was naive and religious. These, coupled with his cognitive deficits, likely affected Moore's perception of his legal situation. Goering also relayed to Moore an ex parte conversation with the trial judge in which the judge told Goering: "If the facts are as you say, then maybe this isn't a death penalty case."

We accept these findings, but reach a different conclusion as to voluntariness under the applicable legal standard. A voluntariness hearing *was* conducted before Moore's plea was accepted, with Goering present and by Moore's side.[3] We concluded on direct

---

**2.** The postconviction court relied on *Smith v. State*, 565 N.E.2d 1114 (Ind.Ct.App.1991), *trans. denied* in nullifying Moore's guilty plea for lack of voluntariness. Although purporting to invalidate a guilty plea on this ground, *Smith* itself cited no precedent for what must be shown to establish the involuntariness of a guilty plea under Indiana law. Rather, *Smith* appears to have analyzed the issue under ineffective assistance jurisprudence, concluding that because the defendant likely would have gone to trial but for counsel's errors, the plea was not knowing, voluntary and intelligent. *Id.* at 1117. *Smith* therefore is better seen as a Sixth Amendment case

than a voluntariness case. To the extent other decisions, *e.g*, *Burse v. State*, 515 N.E.2d 1383 (Ind.1987), commingled the two concepts, the same is true of them.

**3.** The statute governing Moore's voluntariness hearing in 1980 has since been repealed. IND. CODE § 35–4.1–1–3 (1976). It was recodified with some changes at Indiana Code § 35–35–1–2 in 1981. *See* 1981 Ind.Acts, P.L. 298, § 4. Although Moore pleaded guilty before *White* was handed down, it is settled that *White* applies retroactively and to adjudications under the prior

 

appeal, *Moore*, 479 N.E.2d at 1268, and upon reviewing the trial record see no basis for concluding otherwise today, that Moore's voluntariness was established in this hearing. Indeed, the judge methodically explained to Moore all the rights waived by pleading guilty, as well as possible sentencing consequences. The judge quite clearly told Moore that he could still be sentenced to death. Moore stated that he had not been coerced in any way into pleading guilty, and no evidence supports the conclusion that he was. Because the applicable plea hearing statute was followed in near-textbook fashion when Moore pleaded guilty, he faces a high burden in establishing lack of voluntariness under *White*.

 In addition to pointing to evidence bolstering Moore's hopes for a term of years, the court relied on Goering's misapprehension of the law of venue and failure to investigate the crime scene as grounds for finding lack of voluntariness. These factors, however, bear on the competency of Goering's performance under *Strickland* and not on the voluntariness of the plea under Indiana law. The only relevant factor working remotely in Moore's favor is the trial judge's ex parte remark to Goering before the hearing, as testified by Goering on postconviction, that "if the facts are as you say, then maybe this isn't a death penalty case." Taking this evidence most favorably to Moore, however, it does not establish that he was actually misled into pleading guilty. There is no showing of a promise or commitment upon which Moore relied in entering his plea. *Ryan v. State*, 479 N.E.2d 517, 519 (Ind.1985). At most, the judge's remark gave Moore hope that he would receive something less than the death penalty. A mere hope for a certain outcome at sentencing, without more, does not suffice to set aside a guilty plea for lack of voluntariness. *Neville v. State*, 439 N.E.2d 1358, 1360 (Ind.1982); *Flowers v. State*, 421 N.E.2d 632,

634 (Ind.1981). Thus, the postconviction court's factual findings bearing on Moore's hopes about sentencing, standing alone, are insufficient. To the extent the trial judge gave Moore hope with the comment, which was clearly hedged and did not constitute a commitment even if on the record, the error was cured by the subsequent plea hearing in which Moore was clearly told that he could still be sentenced to death. In addition, the judge specifically asked Moore whether he had received any promises or been offered special treatment or leniency to induce him to plead guilty, and Moore answered in the negative. Any claim of reliance is further undercut by the fact that Goering explained to Moore that he was giving up constitutional rights by pleading guilty and that the full range of sentences would still be available to the State at the sentencing hearing. As Goering testified, the decision to plead guilty was discussed "extensively" and on "more than one occasion." In sum, because Moore was advised of his rights at the plea hearing as required by statute and was not coerced or misled into pleading guilty, his plea was not involuntary. We accordingly reinstate the guilty plea today.

### Conclusion

The grant of postconviction relief to petitioner Richard D. Moore is reversed and the guilty plea is reinstated. This case is remanded for a new sentencing hearing.[4]

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

version of the statute, as here. *Woodford v. State*, 544 N.E.2d 1355, 1358 (Ind.1989); *Buskirk v. State*, 511 N.E.2d 305 (Ind.1987). Retroactive application of *White* was upheld against a federal constitutional challenge in *Kirk v. Duckworth*, 761 F.Supp. 77 (N.D.Ind.1989), *affirmed*, 929 F.2d 703 (7th Cir.1991) (unpublished table decision).

4. Moore pleaded guilty without a written plea agreement in this case. The postconviction court concluded that the guilty plea failed to comply with Indiana Code § 35-5-6-2 (now codified at Indiana Code § 35-35-3-3) because the State was seeking the death penalty for Moore even if he pleaded guilty. However, in 1980 the statute required that a prosecutor's recommendation on sentencing be in writing only if the guilty plea

was given in exchange for recommending less than the maximum sentence prescribed by law. IND.CODE § 35–5–6 (1976). Because the State offered Moore no deal on sentencing, the post-conviction court erred in concluding that the statute was violated. This point, accordingly, presents no grounds for setting aside the plea.