**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 27 2012, 8:26 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**DEREK LEE MORRIS**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANN L. GOODWIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEREK LEE MORRIS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1106-PC-379 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-0511-PC-193247

**April 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Derek Lee Morris ("Morris") appeals the denial of his petition for post-conviction relief, wherein he challenged his conviction for Child Molesting. We affirm.

**Issues**

Morris presents three issues for review:[1]

I. Whether he was denied the effective assistance of trial counsel;
II. Whether he was denied the effective assistance of appellate counsel; and
III. Whether he was denied procedural due process in the post-conviction proceedings.

**Facts and Procedural History**

On direct appeal, the Court recited the relevant facts as follows:

In August 2005, Morris spent the night at his girlfriend's home. When his girlfriend left for work the following morning, Morris held her thirteen year-old daughter down by her arms and removed her clothing. He then placed his penis inside the daughter's vagina. After the victim told her mother what happened, Morris was charged with Class A felony child molesting.

Morris v. State, No. 49A02-0702-CR-172, slip op. at 2 (Ind. Ct. App. Feb. 11, 2008).

---

[1] Morris's purported issues include his assertions that the trial court abused its discretion or denied him due process by failing to acknowledge Morris's pre-trial letter complaining of his counsel's deficiencies and requesting substitute counsel, failing to sua sponte remove a juror who cried during the victim's testimony (but instead providing her with a tissue), and failing to ensure that Morris was tried by a racially-mixed jury. Post-conviction procedures do not afford petitioners with a "super-appeal"; rather, the post-conviction rules contemplate a narrow remedy for subsequent collateral challenges to convictions. Reed v. State, 856 N.E.2d 1189, 1194 (Ind. 2006). The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. Id. If an issue was known and available but not raised on appeal, it is waived. Id. If an issue was raised on direct appeal, but decided adversely to the petitioner, it is res judicata. Id. Moreover, collateral challenges to convictions must be based upon grounds enumerated in the post-conviction rule. Shanabarger v. State, 846 N.E.2d 702, 707 (Ind. Ct. App. 2006), trans. denied; see also Ind. Post-Conviction Rule 1(1). Accordingly, we do not address Morris's free-standing claims of deprivation of due process and abuse of discretion.

On December 14, 2006, a jury found Morris guilty as charged. He was sentenced to twenty-five years imprisonment.

Morris appealed, alleging error in the admission of hearsay testimony regarding his age and a jury instruction describing the degree of penetration necessary to constitute sexual intercourse. See id. The conviction was affirmed. See id. at 3. On June 9, 2008, Morris filed a petition for post-conviction relief. A hearing was held on June 16, 2010, and on January 9, 2011. On June 9, 2011, the post-conviction court entered its Findings of Fact, Conclusions of Law, and order denying Morris post-conviction relief. He now appeals.

## Discussion and Decision

### Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Id. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the

3

evidence and the credibility of witnesses.  Id.

### I.  Effectiveness of Trial Counsel

Morris claims that his trial attorney was ineffective because he:  (1) failed to present an alibi defense by calling a particular witness and introducing certain evidentiary exhibits, including Morris's cell phone records of the day in question and a calendar with entries memorializing his sexual encounters; (2) failed to adequately impeach the victim's testimony and that of the victim's mother; (3) failed to thoroughly consult with Morris and mend their attorney-client relationship after it had degenerated to include name-calling; and (4) failed to adequately prepare for trial.

To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "First, a defendant must show that counsel's performance was deficient."  Id. at 687.  This requires a showing that counsel's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment."  Id.  "Second, a defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial," that is, a trial where the result is reliable.  Id.  To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the

outcome. Id. Further, we "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. McCary v. State, 761 N.E.2d 389, 392 (Ind. 2002).

Counsel is to be afforded considerable discretion in the choice of strategy and tactics. Timberlake v. State, 753 N.E.2d 591, 603 (Ind. 2001). Counsel's conduct is assessed based upon the facts known at the time and not through hindsight. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997). We do not "second-guess" strategic decisions requiring reasonable professional judgment even if the strategy in hindsight did not serve the defendant's interests. Id. In sum, trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside of the objective standard of reasonableness. Autrey v. State, 700 N.E.2d 1140, 1141 (Ind. 1998).

David Shircliff ("Shircliff"), who represented Morris at trial, testified at the post-conviction hearing. Shircliff explained that the theory of Morris's defense was that the victim, T.E., was unhappy at home and had accused Morris in order to get out of the home.

In furtherance of this defense, Shircliff questioned T.E. and her mother about their relationship, eliciting evidence that it had been tumultuous. Counsel cross-examined T.E. extensively regarding her recollection of events, the delay in reporting, and continued contact with Morris. Counsel vigorously cross-examined T.E.'s mother as to why she had not been attentive to her daughter's discomfort and the bloodstain on her clothing. He elicited an admission that medical assistance had not immediately been obtained. He also elicited an admission from the physician who examined T.E. months later that the results of T.E.'s

5

examination could mean that "absolutely nothing happened." (Tr. 113.) In closing, he highlighted the absence of forensic evidence and argued that the State had failed to establish that an act of sexual intercourse took place.

Morris now argues that the theory of defense should have been that Morris could not have stayed the night with T.E.'s mother and been present to attack T.E. on August 10, 2005, because he was with another woman all night. In Morris's view, this defense would have been ably established had counsel introduced Morris's cell phone records, his personal calendar, and appropriate witnesses.

During her trial testimony, T.E. said that Morris had ceased having intercourse with her when his cell phone rang. Morris claims that his cell phone records would have shown that his phone rang at 11:00 a.m. as opposed to 7:00 to 8:00 a.m., when T.E.'s mother left for work. However, Morris's argument that the cell records would have impeached T.E.'s testimony is based upon his assumption that T.E. testified that the attack took place at a specified time.

At the post-conviction hearing, Shircliff testified that he understood T.E. to be unclear on the exact time the cell phone rang. His assessment is supported by the record. T.E.'s testimony with regard to the timing of the offense was that she did not remember what time she awoke, but her older brother had left for his first day of school and her mother was at work. As such, Morris's cell phone records do not provide impeachment evidence.

Morris also claims that his calendar, upon which he wrote the names of women with whom he had sexual encounters, was relevant alibi evidence ignored by Shircliff. Morris

6

testified at trial that he remembered he was with C.R. because "I wrote it on my calendar, and I keep track of whoever that I'm having sex with." (Tr. 153.) However, the calendar was not introduced into evidence. Shircliff explained at the post-conviction hearing that he and Morris had agreed, "that calendar was not a good thing." (P.C.R. Tr. 77.) We find the rejection of the self-serving document to be within the range of reasonable professional norms.

Additionally, Morris contends that his trial counsel was ineffective for failing to call as a witness Morris's cousin and former roommate, Dennis Boyd ("Boyd"). "A decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess … although a failure to call a useful witness can constitute deficient performance." Brown v. State, 691 N.E.2d 438, 447 (Ind. 1998). "Absent a clear showing of injury and prejudice, we will not declare counsel ineffective for failure to call a witness." Osborne v. State, 481 N.E.2d 376, 380 (Ind. 1985).

According to Boyd's testimony at the post-conviction hearing, he had observed Morris and C.R. come into Boyd's apartment at 3:00 a.m. on August 10, 2005. Boyd explained that he was able to recall the date because he had been "in and out of town" doing cleanup work after Hurricane Katrina, then had fallen ill and returned to Indianapolis. (P.C.R. Tr. 32.) However, the post-conviction court observed that the date of T.E.'s rape, August 10, 2005, preceded Hurricane Katrina, which hit New Orleans on August 29, 2005. Accordingly, the post-conviction court found that Boyd's faulty recollection would not have provided Morris with persuasive alibi testimony.

7

Morris now concedes that his cousin's post-conviction testimony was lacking in credibility, but argues that, had trial counsel called Boyd to testify at trial, his memory would not have been impaired by years of drug use and failing health. We find the argument to be highly speculative. The post-conviction court concluded that trial counsel did not unreasonably or detrimentally reject a useful witness. We cannot say that the evidence before the post-conviction court leads unerringly and unmistakably to a contrary result.

Morris claims that the school records of T.E.'s brother and the work records of T.E.'s mother should have been introduced into evidence at trial, but he does not explain how these would likely have affected the outcome of his case. Bald assertions of counsel's omissions or mistakes are inadequate to support a post-conviction claim of ineffectiveness of counsel. Tapia v. State, 753 N.E.2d 581, 587 (Ind. 2001).

Morris also contends that the relationship between himself and Shircliff was irretrievably broken such that Shircliff ceased to act adversarial to the State's position. Morris addressed a letter to the trial court requesting alternate representation and thereafter, Shircliff allegedly called Morris a "prolific shit talker." (P.C.R. Tr. 42.) Shircliff testified that he may have addressed Morris as such; it was "not beyond the realm of something [he] might say," but nonetheless, he was not motivated to retaliate for the letter. (P.C.R. Tr. 42.) The post-conviction court found that, despite the admittedly strained relationship, Shircliff adequately represented Morris. In light of Shircliff's vigorous defense of Morris, we cannot say that all the evidence before the post-conviction court points to a conclusion that the attorney-client relationship was irretrievably broken.

8

Morris also claims that his trial counsel was generally unprepared to defend him. In support of his argument, Morris estimates that Shircliff spent no more than three and one-half hours in face-to-face conference with Morris. However, he does not acknowledge Shircliff's testimony that there were telephone conferences. Nor does Morris acknowledge the testimony of Shircliff's investigator that he had visited Morris in jail. Too, Shircliff testified that he or his investigator had researched all witnesses or people of interest who could be found, including Morris's potential alibi witnesses. (PCR Tr. 79-82, 138.) The post-conviction court concluded that Shircliff had adequately prepared for trial. On the record before us, we do not find that all evidence leads to a contrary conclusion.

Trial counsel's decision to pursue a defense that the victim had a motive for fabrication is within the realm of reasonable professional judgment. So too is counsel's decision not to introduce Morris's cell phone records or calendar. Finally, the record supports the post-conviction court's conclusion that trial counsel did not fail to investigate or reject a viable alibi witness. Counsel's efforts and strategy, although they did not ultimately achieve the result desired by Morris, were not so unreasonable as to constitute ineffective assistance of counsel. See Badelle v. State, 754 N.E.2d 510, 539 (Ind. Ct. App. 2001) (deciding in relevant part that, when trial counsel's efforts were "more than adequate" to support a chosen defense, counsel's decision not to call or seek out additional witnesses was a judgment call within the wide range of reasonable assistance), trans. denied.

## II. Effectiveness of Appellate Counsel

A defendant is entitled to the effective assistance of appellate counsel. Stevens v.

State, 770 N.E.2d 739, 760 (Ind. 2002). Appellate ineffectiveness claims are evaluated under the standard of Strickland, 466 U.S. at 668.

Morris claims that appellate counsel was ineffective for failing to raise viable issues. According to Morris, appellate counsel should have challenged the trial court's failure to remove the crying juror, should have raised an issue based on newly discovered evidence, and should have claimed ineffectiveness of trial counsel.

The decision regarding what issue or issues to raise on appeal "is one of the most important strategic decisions made by appellate counsel." Bieghler v. State, 690 N.E.2d 188, 193 (Ind. 1997). The petitioner must demonstrate "from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy." Ben-Yisrayl v. State, 738 N.E.2d 253, 261 (Ind. 2000). Even if counsel's choice of issues was not reasonable, the petitioner's claim will not prevail unless he can demonstrate a reasonable probability that the outcome of the direct appeal would have been different. Bieghler, 690 N.E.2d at 194.

Although Morris faults his appellate attorney for failing to raise an issue regarding the trial court's failure to sua sponte remove a crying juror, he cites no authority for the proposition that a trial court has such a duty. In a similar vein, he claims that his appellate attorney should have raised newly discovered evidence but does not describe the newly discovered evidence. Finally, he contends that appellate counsel should have claimed that trial counsel was ineffective. As we have determined that trial counsel was not ineffective,

10

appellate counsel was not ineffective for failing to raise this issue.

### III. Due Process in Post-Conviction Proceedings

Finally, Morris claims that he was denied procedural due process because the post-conviction court declined to order service of subpoenas, denied motions filed prior to the post-conviction evidentiary hearings,[2] and entered findings and conclusions that addressed less than all of Morris's issues. The appellate record before us does not provide us with the opportunity for meaningful review.

First, Morris has not included copies of subpoenas for witnesses he claims were excluded, nor has he directed our attention to a specific and relevant portion of the post-conviction record. Our review of the post-conviction transcript reveals that, at the conclusion of the hearing on June 16, 2010, Morris inquired of the post-conviction court as to whether he could possibly "get witnesses that didn't make it" to the hearing. (P.C.R. Tr. 83.) The post-conviction court responded that subpoenas would be sent, with the exception of any additional proffered alibi witnesses, because the "alibi is dead in the water." (P.C.R. Tr. 83.) Morris questioned whether this included his former girlfriend, C.R., and the post-conviction court, while not answering Morris directly, appeared to consider C.R. to be an alibi witness. However, when the hearing reconvened on January 19, 2011, the post-conviction court advised Morris that an order to appear had been sent to C.R. in December, at the address

---

[2] In his cursory allegation of error, Morris does not specify what motions were denied. We note that, at the post-conviction hearing, Morris advised the trial court that he had filed a motion for separation of witnesses. The post-conviction court denied having received the written motion, but nonetheless orally granted the motion.

provided by Morris, albeit without personal service. As such, we cannot conclude that Morris was deprived of the opportunity to subpoena a necessary witness.

Morris has included within his appendix a copy of his "Motion to Object [to] Court's Denials of Petitioner's Pro Se Motions." (App. 78.) The motion lists several motions allegedly denied: "(A) Motion for Discovery with Addendum, (B) Seven Subpoena Duces Tecums [sic], (C) Appointment of Co-Counsel for P.C. Evidentiary Hearing, (D) Motion for Time to Interview Witnesses Prior to P.C. Hearing, (E) Motion to Compel Release of Documents, (F) Motion for Transcript + Order to Comply with Request for Copy of Transcript, (G) Motion for an Order Directing the Opposing Party to Produce Original and Certified Record on Appeal to be used for Post Conviction Evidentiary Hearing." (App. 78.) However, Morris has failed to include within the appendix copies of motions he claims were denied, such that the substance of the motions could be evaluated.

Finally, although Morris contends that the post-conviction court failed to address some of his allegations or grounds for post-conviction relief, he has not included a copy of his petition for post-conviction relief in his appellate record. Nor does he describe which of his alleged grounds for relief was not addressed. We cannot, based upon bald assertions, conclude that Morris was denied procedural due process.

**Conclusion**

Morris has not established that he was denied the effective assistance of trial or appellate counsel; nor has he shown that he was denied procedural due process. Accordingly, the post-conviction court properly denied Morris post-conviction relief.

12

Affirmed.

ROBB, C.J., and MATHIAS, J., concur.