## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 22 2017, 6:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jay M. Lee
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indian

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Yoder,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 22, 2017

Court of Appeals Case No.
20A04-1607-PC-1674

Appeal from the Elkhart Superior Court

The Honorable Stephen Bowers, Judge

Trial Court Cause No.
20D02-1411-PC-42

**Bailey, Judge.**

# Case Summary

Thomas Yoder ("Yoder") appeals the denial of his petition for post-conviction relief, following his convictions of Battery by Means of a Deadly Weapon, as a Class C felony,[1] and Intimidation, as a Class C felony.[2] We affirm in part, reverse in part, and remand with instructions.

# Issues

Yoder presents the following consolidated and restated issues:

I. Whether he was denied the effective assistance of trial counsel because trial counsel failed to play Yoder the recording of the victim's 9-1-1 call; and

II. Whether he was denied the effective assistance of trial counsel and appellate counsel because neither trial counsel nor appellate counsel raised the issue of double jeopardy.

---

[1] Ind. Code § 35-42-2-1(a)(3). Throughout our decision, we refer to the substantive provisions of the Indiana Code in effect at the time of and applicable to the charged offenses.

[2] I.C. § 35-45-2-1(a)(2), (b)(2).

# Facts and Procedural History

[3] In March of 2013, Yoder was in a romantic relationship with Lisa Wessler ("Wessler").[3] In the past, Wessler and David Puro ("Puro") had an intimate relationship, and the two remained friends.

[4] On March 9, 2013, Wessler, Puro, and friends met for afternoon drinks in downtown Goshen. Afterward, a friend gave Puro a ride home, and Puro fell asleep in his living room. He woke up around 10:30 p.m. to knocking on his door. When he opened the door, he saw Wessler crying. Wessler told Puro that she and Yoder had an argument, and asked if she could stay with Puro for a few days. The two stayed up for a while, and then each went to sleep.

[5] Around 1:30 a.m., Puro awoke to pounding at the front door. Puro went to the door, looked out the window, and saw Yoder outside. Yoder demanded entry, but Puro would not let him in. At some point, Yoder began kicking the door, and Puro said that he was going to call 9-1-1. Puro pressed his shoulder against the door, and placed the call. Yoder threatened to kill Puro, and kept trying to force his way inside. Puro told the dispatcher that Yoder was the intruder.

[6] While Puro was on the phone, Yoder stopped trying to force the door open. Yoder then threw a hammer through the door window, reached inside, and

---

[3] Although there was a prior appeal, the appellate opinion focused on restitution and did not recite all of the facts relevant to Yoder's petition. *See Yoder v. State*, 19 N.E.3d 417 (Ind. Ct. App. 2014). We therefore recite them here.

grabbed Puro by the sweater. Yoder pulled Puro toward the door and began beating Puro in the head with a metal chisel. Eventually, Yoder left.

[7] Goshen Police Officer Lloyd Waddell ("Officer Waddell") was one of the responding officers. He followed fresh footprints in the snow, and saw a man walking in the distance. Officer Waddell yelled, and the man began running in the general direction of Yoder's home. Officer Waddell pursued the man, but lost sight of him. Shortly after the pursuit, Officer Waddell knocked on Yoder's door. When Yoder answered, he was sweating and out of breath.

[8] Yoder was arrested, and the State charged him with one count of Battery by Means of a Deadly Weapon, as a Class C felony, and Intimidation, as a Class C felony. Prior to trial, the State made a plea offer whereby Yoder could plead guilty to Intimidation as a Class D felony.[4] The State also gave Yoder's attorney, Gary Griner, a recording of the 9-1-1 call, in which Puro identifies Yoder and the assailant threatens to kill Puro. Griner told Yoder that he had the 9-1-1 recording but Griner did not play the call for Yoder.

[9] Yoder rejected the plea offer and a jury trial commenced, during which the State introduced the 9-1-1 recording. Yoder was found guilty as charged. Shortly after the trial, Yoder told Griner that if Yoder had heard the 9-1-1 call, he would have accepted the plea offer. Griner then wrote Yoder a letter, memorializing their conversation. In the letter, Griner explained that he did

---

[4] The full terms of the offer are unclear from the appellate record.

not play the call for Yoder because he did not think the call was significantly damaging to the case or that it would affect Yoder's decision to go to trial.

[10] Yoder received consecutive four-year sentences, for an aggregate sentence length of eight years, and he was also ordered to pay restitution. On direct appeal, Yoder's appellate counsel challenged only the restitution order. Subsequently, Yoder filed a petition for post-conviction relief on November 10, 2014. Following a hearing, the petition was denied. This appeal ensued.

# Discussion and Decision

## Standard of Review

[11] The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Ellis v. State*, No. 71S05-1606-PC-360, slip op. at 4 (Ind. Jan. 26, 2017). To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Hollowell v. State,* 19 N.E.3d 263, 268-69 (Ind. 2014). Here, the post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—'that which leaves us with a definite and firm

conviction that a mistake has been made.'" *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quoting *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind. 1997), *cert. denied*).

## Failure to Play the 9-1-1 Recording

[12] Yoder argues that he was denied the effective assistance of counsel because trial counsel did not play him the 9-1-1 recording. Yoder contends that had he known the contents of the call, he would have accepted the State's plea offer.

[13] The Sixth Amendment to the United States Constitution provides the right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and this right "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). We analyze ineffective assistance of counsel claims under the two-part test announced in *Strickland*. That is, to prevail on an ineffective assistance of counsel claim, the claimant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Kubsch v. State*, 934 N.E.2d 1138, 1147 (Ind. 2010) (citing *Strickland*, 466 U.S. at 687). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The two prongs of the *Strickland* test—deficient performance and resulting prejudice—

are separate and independent inquiries, and the failure to establish either prong will cause the claim to fail. *State v. Greene*, 16 N.E.3d 416, 419 (Ind. 2014).

[14] We "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002). Moreover, in assessing counsel's conduct, we look at the facts known at the time and not through hindsight. *Moore*, 678 N.E.2d at 1261. Trial strategy is not subject to attack through an ineffective assistance of counsel claim, unless the strategy is so deficient or unreasonable as to fall outside the objective standard of reasonableness. *Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind. 1998).

[15] Here, the post-conviction court concluded that Griner's performance was not deficient, noting that "[h]ad the 9-1-1 recording been the only evidence against Yoder, the Court would agree that [trial counsel] performed deficiently when he failed to play the recording for Yoder while the class D felony offer was on the table." (PCR App. Vol. II at 93-94.) However, at the post-conviction hearing, Griner testified that he went through the police reports with Yoder, and also showed Yoder the victim statement Puro had written. These documents contain Puro's identification of Yoder as the assailant.

[16] The defense theory was wrongful identification because there were others in the home where Yoder was located, there was a delay before Yoder was located, and evidence of alcohol consumption raised questions about the reliability of the State's witnesses. In other words, the defense did not dispute that Puro was

attacked, rather, the defense challenged Puro's identification of Yoder. Thus, when viewing the 9-1-1 recording in relation to the intended defense, the call covered essentially the same ground as other evidence disclosed to Yoder—that Puro was attacked and that Puro identified Yoder. Although the 9-1-1 recording did include the assailant's voice, Griner explained in his letter to Yoder that the attacker did not identify himself on the recording and that "the sound quality is poor and I cannot imagine anyone determining it was your voice." (PCR App. Vol. II at 55.) We cannot reweigh the evidence. *Greene*, 16 N.E.3d at 418.

[17] Ultimately, in light of the planned defense, we are not left with a definite and firm conviction that the post-conviction court erred in determining that Griner's performance was not deficient because he failed to play Yoder the call. Yoder, therefore, did not meet his burden under the first prong of the Strickland test, and we accordingly do not reach the issue of resulting prejudice.

## Double Jeopardy

[18] Yoder next asserts that he was deprived of the effective assistance of both trial counsel and appellate counsel because neither trial counsel nor appellate counsel raised the issue of double jeopardy.

[19] "The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel in that the [claimant] must show appellate counsel was deficient in her performance and that the deficiency resulted in prejudice." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). To evaluate the

performance prong when the claim is that appellate counsel failed to raise an issue, a reviewing court considers "(1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are 'clearly stronger' than the raised issues." *Henley v. State*, 881 N.E.2d 639, 645 (Ind. 2008). If the analysis under this test demonstrates deficient performance, then we evaluate the prejudice prong which requires an examination of whether, but for appellate counsel's errors, the outcome of the direct appeal would have been different. *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)

[20] Yoder argues that evidence of the battery was used to elevate his intimidation charge, contrary to double jeopardy principles. Yoder's argument focuses on the Indiana Constitution, which provides that "[n]o person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. Two convictions may be the "same offense" if, with respect to "either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *McIntire v. State*, 717 N.E.2d 96, 99 (Ind. 1999).

[21] Yoder contends that the Double Jeopardy Clause was violated under the actual evidence test. When reviewing an actual evidence challenge, we examine the evidence presented at trial to determine whether "each challenged offense was established by separate and distinct facts." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). To show that two offenses constitute the "same offense," the claimant "must demonstrate a reasonable possibility that the evidentiary facts

used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53.

[22] In his *Richardson* concurrence, Justice Sullivan articulated five categories of double jeopardy violations, among them, "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Id.* at 56 (Sullivan, J., concurring). Justice Sullivan noted that *McIntire*—decided the same day as *Richardson*—fell within that category. *Id.* (citing *McIntire*, 17 N.E.2d 96).

[23] In *McIntire*, the defendant struck the victim's head with a baseball bat after entering the victim's home. The defendant was convicted of multiple charges, including criminal recklessness, as a Class D felony, and burglary, as a Class A felony. In challenging these convictions on double jeopardy grounds, the defendant pointed out that a jury instruction defined criminal recklessness as a Class D felony if the defendant "recklessly, knowingly, or intentionally inflicts serious bodily injury on another person." *McIntire*, 717 N.E.2d at 101. Yet, the burglary conviction was elevated to a Class A felony because the defendant's behavior "result[ed] in either bodily injury or serious bodily injury to any person other than a defendant." *Id.* at 99 (quoting I.C. § 35-43-2-1 (1993)). In resolving *McIntire*, our supreme determined that there was a double jeopardy violation because "the defendant ha[d] demonstrated a reasonable possibility that the jury used the same evidentiary facts ([the victim's] head injury caused

by the baseball bat) to establish the essential elements of both" charges. *Id.* at 101. Put another way, the very same behavior that supported the criminal recklessness conviction—inflicting serious bodily injury on the victim with a baseball bat—could have elevated the crime of battery. Thus, there was a reasonable possibility that the defendant was twice punished for the same act.

[24] *McIntire* is instructive. Here, Yoder was charged with Battery by Means of a Deadly Weapon as a Class C felony and Intimidation as a Class C felony. As charged, the relevant statutory definition of battery provides:

> A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is . . . a Class C felony if it . . . is committed by means of a deadly weapon.

I.C. § 35-42-2-1.

[25] The relevant statutory definition of intimidation provides:

> A person who communicates a threat to another person, with the intent . . . that the other person be placed in fear of retaliation for a prior lawful act . . . commits intimidation, a Class A misdemeanor. . . . However, the offense is a . . . Class C felony if, while committing it, the person draws *or uses* a deadly weapon.

I.C. § 35-45-2-1(a), (b)(2) (emphasis added).[5]

---

[5] In the charging information for intimidation, the State alleged only that Yoder drew the metal chisel. However, "our identification of the evidentiary facts used by the jury in reaching its decisions may be informed by consideration of the final jury instructions and argument of counsel." *McIntire*, 717 N.E.2d at

[26] Applying *McIntire*, Yoder argues that there was a reasonable possibility that his intimidation charge was elevated for the very same conduct supporting his battery conviction—use of the chisel. The only "use" of the chisel supported by the evidence is that Yoder beat Puro with it, that is, that Yoder committed the battery for which he was convicted and punished.

[27] In addressing *McIntire*, both the State and post-conviction court focus on a different double jeopardy violation presented in that case, which is inapposite. The State also directs us to language from a case the post-conviction court relied on in denying Yoder relief:

> [O]ur recognition in *Richardson* of the common law rule establishing that enhancements cannot be imposed for the very same behavior could not have included use of a single deadly weapon during the commission of separate offenses . . . because no such common law rule existed.

*Sistrunk v. State*, 36 N.E.3d 1051, 1054 (Ind. 2015).

[28] The reliance on *Sistrunk* is misplaced. In *Sistrunk*, multiple offenses were elevated because the defendant committed each offense while armed with a gun. Our supreme court determined that there was no double jeopardy violation, concluding that possession of the same weapon could elevate separate offenses. *Id.* ("[O]ur jurisprudence teaches that committing two or more

---

101. Here, the State argued, and a jury instruction stated, that the jury could convict Yoder of Class C felony intimidation if Yoder "drew or used a deadly weapon" while committing the offense. (Trial Tr. Vol. I at 192; Direct Appeal App. Vol. I at 61.)

separate offenses each while armed with a deadly weapon—even the same weapon—is not within the category of rules precluding the enhancement of each offense based on 'the very same behavior.'") Here, however, Yoder alleges a different sort of double jeopardy violation. It is not that both of Yoder's offenses were elevated because they involved the same weapon.[6] Rather, here, like in *McIntire*, the entire other crime—Yoder's battery—was potentially used to elevate Yoder's intimidation charge to a Class C felony. This presents the very risk contemplated by the principles of double jeopardy, namely, that Yoder could have been twice punished for beating Puro—once through the battery conviction and again through elevating the intimidation offense. *See Richardson*, 717 N.E.2d at 49 ("Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression.")

[29] Yoder demonstrated, by a preponderance of the evidence, a reasonable possibility that the very conduct giving rise to his battery conviction was used to elevate his intimidation conviction to a Class C felony, contrary to principles of double jeopardy. Trial counsel's and appellate counsel's failure to raise this issue was objectively unreasonable, as the issue was significant and obvious from the face of the record. Moreover, Yoder was prejudiced; had the issue been raised, Yoder's intimidation conviction would have been reduced from a

---

[6] This is one argument Yoder presented to the post-conviction court, but Yoder also argued that "the jury relied on the *use* of the chisel for both counts, as well." (PCR App. Vol. II at 78-79.)

Class C felony to a Class A misdemeanor, which carries significantly less penal exposure.[7] Although appellate counsel successfully raised a restitution issue, the double jeopardy violation—a constitutional defect—was the stronger issue.

[30] Because Yoder was convicted of an elevated charge of intimidation that would have been prohibited by double jeopardy principles, we conclude that the post-conviction court erred by denying Yoder post-conviction relief due to the failure of counsel to raise a double jeopardy issue. Accordingly, we reverse this aspect of the post-conviction court's judgment, and remand with instructions to reduce Yoder's intimidation conviction to a Class A misdemeanor and to impose a sentence of one year, with the sentence to run consecutive to Yoder's existing four-year sentence.[8]

# Conclusion

[31] The post-conviction court did not clearly err in concluding that Yoder did not receive ineffective assistance of trial counsel due to counsel's failure to play Yoder a 9-1-1 recording, but the post-conviction court clearly erred by denying

---

[7] The State did not charge Yoder with Intimidation, as a Class D felony, therefore the jury verdict could rest only on the Class A misdemeanor. The maximum sentence for a Class A misdemeanor is one year whereas Yoder faced a maximum sentence of eight years on his Class C felony. *See* I.C. §§ 35-50-3-2, -6.

[8] Indiana Appellate Rule 66(C) authorizes us to "grant any other appropriate relief" in deciding a case. In the interest of judicial economy, we elect to direct the trial court to impose a specific sentence rather than to remand for a resentencing hearing. *See Spurlock v. State*, 675 N.E.2d 312, 317 (Ind. 1996) (ordering the trial court to reduce two counts and to impose a specific sentence). Here, we note that the trial court, at sentencing, stated that it "ha[d] not found any substantial grounds that tend to excuse or justify Mr. Yoder's conduct" (Trial Tr. Vol. II at 271) and that it could not "find a way to give [him] a break . . . . It's just not here." (Trial Tr. Vol. II at 272.)

Yoder post-conviction relief due to trial counsel's and appellate counsel's failure to raise the issue of double jeopardy.

[32] Affirmed in part, reversed in part, and remanded with instructions.

Najam, J., and May, J., concur.